UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693
BANKRUPTCY JUDGE  Fax: (973) 645-2606

**FILED**
JAMES J. WALDRON, CLERK

FEB 6 2006

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

**NOT FOR PUBLICATION**

February 6, 2006

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Orloff, Lowenbach, Stifelman & Siegel, P.A.
Bernard Schenkler, Esq,
101 Eisenhower Parkway
Roseland, New Jersey 07068
*Attorneys for Robert Elison*

Nowell Amoroso Klein Bierman
David Edelberg, Esq.
155 Polifly Road
Hackensack, New Jersey 07601
*Attorneys for Nanjing Sunkon Industrial Co., Ltd.,*
*Jiangsu Sainty International Group Tech Development Corp., Ltd.,*
*and Nanda Shine Rise Science (HK) Co., Ltd.*

Re:  **In re DGE Corp.**
     **Case No. 05-60608 (DHS)**

Dear Counsel:

     Before the Court is a motion to dismiss an involuntary bankruptcy petition pursuant to § 305 of the Bankruptcy Code.  See 11 U.S.C. § 305 (West 2006).  On December 7, 2005, petitioning creditors Nanjing

Page 2
February 6, 2006

Sunkon Industrial Co., Ltd., Jiangsu Sainty International Group Tech Development Corp., Ltd., and Nanda Shine Rise Science (HK) Co., Ltd. (collectively the "Petitioners") filed an involuntary bankruptcy petition against DGE Corp. Robert Elison, a 30% shareholder of DGE Corp. ("DGE"), filed an answer to the involuntary petition along with the present motion to dismiss the involuntary petition. The other shareholders of DGE are Daniel Zhou, who holds a 30% interest in the Company, Stuart Kessler, who also holds a 30% interest in DGE, and Alec Kessler, who owns a 10% interest in the Company. For the following reasons, the motion to dismiss pursuant to § 305 of the Code is denied, and this Court will retain jurisdiction over the Debtor's affairs.

## I.     Factual Background

By way of brief background, DGE was formed in 1994 by Robert Elison, Daniel Zhou, and Stuart and Alec Kessler. DGE, which no longer conducts business, was originally in the business of designing and marketing plush toys such as stuffed animals, dolls and novelties. According to Elison, the movant, the relationship between the shareholders deteriorated in 2005. Elison alleges that Zhou and the Kesslers engaged in improper self-dealing, while he, Elison, exercised "self-help" by removing $173,000 from a corporate account, a portion of which he says was used to pay DGE's business expenses. Evidently, Elison's conduct led to a lawsuit commenced by DGE against Elison in the Superior Court of New Jersey.

By consent order dated August 17, 2005, the parties in the state court action consented to arbitration and the appointment of John B. Newman, Esq. as Special Fiscal Agent for DGE. Mr. Newman had been the Corporation's legal counsel. Pursuant to the terms of the consent order, the Special Fiscal Agent has the authority to, *inter alia*, act on behalf of DGE in connection with any business affairs of the Company. The consent order also enjoined the shareholders of DGE from acting on behalf of the Company without first obtaining express authorization from the Special Fiscal Agent.

Subsequent to his appointment, the Special Fiscal Agent conducted an investigation into the financial affairs of DGE and issued a report on October 12, 2005. The report revealed that DGE's liabilities well exceeded its assets, that much of the inventory was "significantly old," that "many of the payables were 12 months overdue," and that the "Company was clearly insolvent" and "must" wind down its affairs. As for the Company's monthly expenses, the report stated that "even assuming zero payroll after October 31[, 2005], DGE's burn rate will still be over $16,000 per month . . . mostly for the warehouses." Consequently, the Special Fiscal Agent took actions to wind down the business, including, but not limited to, the following: 1) terminating leases; 2) selling inventory; 3) returning office equipment; and 4) paying outstanding creditors. The report recommended to the court that an assignment for the benefit of creditors be executed on behalf of the Company.

Thereafter, on October 20, 2005, Elison filed a state court derivative action on behalf of DGE against the Company, Zhou, and the Kesslers based upon the other defendant shareholders' alleged self-dealing and

Page 3
February 6, 2006

breach of fiduciary duties. After filing the derivative complaint, Elison filed an order to show cause seeking to enjoin DGE from "winding down its business operations, disposing of its inventory, and/or causing DGE to be dissolved." Such filings came almost immediately after the Special Fiscal Agent's report which recommended such actions. As the state court accurately recognized, because the Special Fiscal Agent was the only party with any authority to manage DGE's affairs, Elison was in fact asking the court "to prohibit the Special Fiscal Agent from taking the above actions." While the court denied Elison's request for temporary restraints, the court stated as follows: "In light of DGE's undisputed financial status, however, the court sees no other alternative to the winding down of the Company's affairs." Moreover, in its November 18, 2005 written opinion denying Elison's request for temporary restraints, the state court noted that although the Special Fiscal Agent could continue to liquidate DGE's assets, the Special Fiscal Agent had no authority to formally dissolve the Company unless otherwise approved by the court in the future. Soon after the court's opinion, the Petitioners filed an involuntary bankruptcy petition against DGE in this Court on December 7, 2005.

    In support of his motion to dismiss, Elison submits the following:

> Having opposed the Special Fiscal Agent's decision to wind down and liquidate DGE and lost, Elison now views the involuntary bankruptcy petition as a worse alternative, since it is apparent that it was a strategic move by Zhou and Kessler who orchestrated the petitioning creditors, including Sunkon, the joint venturer with DGE Corp., in order to stop Elison's derivative action.
>
> In light of the fact that the Special Fiscal Agent has been given broad powers to wind up and liquidate the corporation under state law, and that his actions are under the supervision of the Superior Court, a bankruptcy proceeding is both unnecessary and a waste of money. Allowing the state court Special Fiscal Agent to finalize winding up and liquidating the corporation is in the best interests of creditors and the debtor, and simply makes more economic sense. In addition, allowing the state court action to continue its jurisdiction will allow Elison to continue to prosecute the derivative action against Zhou and the Kesslers which, if successful, will greatly benefit DGE's creditors.
>
> There is nothing that can be achieved in bankruptcy that could not be accomplished more efficiently and economically in the pending state court action in which DGE is being liquidated by the Special Fiscal Agent. DGE does not seek a discharge or reorganization. It is being liquidated. Bankruptcy relief is not needed by the debtor.

    Against this background, the Court will turn to its legal conclusions.

Page 4
February 6, 2006

## II. Discussion

Section 305 of the Bankruptcy Code provides in relevant part as follows:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if –
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .
>
> [11 U.S.C. § 305 (West 2006)].

The decision to dismiss an involuntarily filed bankruptcy petition pursuant to § 305 of the Code lies solely within the discretion of the bankruptcy court. *In re Williamsburg Suites, Ltd.*, 117 B.R. 216, 218 (Bankr. E.D. Va. 1990) (citation omitted). *See also In re Fitzgerald Group*, 38 B.R. 16, 17 (Bankr. S.D.N.Y. 1983). It is settled that a dismissal pursuant to § 305(a)(1) of the Code is an extraordinary remedy that should be applied with extreme caution. *In re Cincinnati Gear Co.*, 304 B.R. 784, 785 (Bankr. S.D. Ohio 2003) (citing *In re Edwards*, 214 B.R. 613, 620 (B.A.P. 9th Cir. 1997)). Courts often decline to dismiss a case under § 305(a) because § 305(c) provides that an order either dismissing the case or denying a request for dismissal "is not reviewable by appeal or otherwise by the court of appeals . . . or by the Supreme Court of the United States . . . ." 11 U.S.C. § 305(c) (West 2006). *See, e.g., In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988) ("As § 305(c) provides that an Order under this section is not reviewable by appeal or otherwise, courts generally, and this court specifically, only grant this type of relief in an egregious situation"). The key issue in determining the propriety of a § 305 dismissal is whether it will serve the best interests of both the debtor *and* the creditors. *In re O'Neil Village Personal Care Corp.*, 88 B.R. at 79 (emphasis in original).

Several courts have held that § 305 abstention or dismissal is appropriate when another forum is available to determine the parties' interests and, in fact, such an action has been commenced. *Id.* at 80 (citations omitted). In addition, other courts have stated that economy and efficiency of administration must be key considerations in the abstention decision. *Id.* (citations omitted). More expansively, in applying § 305(a), courts have considered a wide range of factors, including but not limited to, who filed the bankruptcy petition, the availability of another forum to resolve the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison with proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to the various parties. *In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996) (citations omitted).

Page 5
February 6, 2006

Here, after reviewing the parties' extensive submissions, the Court is not convinced that abstention or dismissal is in the best interests of both the Debtor and its creditors. In short, Elison has failed to persuade the Court that dismissal would benefit DGE and its creditor body. Instead, it appears to this Court that remaining in bankruptcy may be less attractive to Elison individually, who previously opposed granting the Special Fiscal Agent authority to wind-down and liquidate the Corporation and who certainly appears concerned over the possibility that he might lose the ability to personally prosecute his derivative action against his former business partners, than to the Debtor and its creditors. This is not sufficient justification for this Court to exercise the extraordinary remedy of dismissal pursuant to § 305 of the Code.[1]

Unlike the more usual situation where a receiver has been appointed or an assignment for the benefit of creditors is already established prior to the filing of an involuntary petition, in this case, while a Special Fiscal Agent exists, his power is undeniably limited and according to *his own* observation and report, the Special Fiscal Agent would *still need* to obtain court approval to have Daniel Zhou, as President of DGE, execute an assignment for the benefit of creditors. This Court is convinced that the immediate appointment of a bankruptcy trustee will be a more expeditious process than the Special Fiscal Agent seeking state court approval for the filing of an assignment for the benefit of creditors, particularly because the feuding shareholders (and specifically Elison) would have the ability to contest in state court the application for the assignment for the benefit of creditors. Any additional delay would only worsen the prospects of recovery for DGE's creditors. Since the Special Fiscal Agent acknowledges that he must initiate a proceeding to secure the necessary remedy, this involuntary bankruptcy is more than appropriate. Further, a bankruptcy trustee will be able to accomplish many things that the Special Fiscal Agent might not be able to accomplish under his current limited powers, such as issuing Federal Rule of Bankruptcy Procedure 2004 subpoenas to investigate and account for the remaining missing funds taken by Elison and, if appropriate, to pursue actions arising from this conduct. To the extent Elison has an actionable and worthwhile claim against the Company and its other shareholders, there is no reason why the bankruptcy trustee could not pursue a derivative action if, in his or her opinion after investigating the matter, such litigation will benefit DGE's creditors.

For these reasons, the motion to dismiss the involuntary petition under § 305 is hereby denied.

---

[1] Because the Court is denying Elison's motion to dismiss, the Court need not address the issues of standing and judicial estoppel raised by the Petitioners in their opposition to the motion.

Page 6
February 6, 2006

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

s/  **Donald H. Steckroth**

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure